Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 8539 | DATE | July 29, 2002 |
| CASE TITLE | Inspec Foams, Inc. v The Claremont Sales Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, Plaintiff's motion for summary judgment (doc. no. 13) is granted on count I and denied on count II. Plaintiff is entitled to interest.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | JUL 3 0 2002 date docketed | 23 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | 02 JUL 29 PM 4:58 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INSPEC FOAMS, INC., )
)
Plaintiff, )
) No. 01 C 8539
v. )
) Judge Robert W. Gettleman
THE CLAREMONT SALES CORPORATION, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Inspec Foams, Inc. filed a two-count complaint against defendant The Claremont Sales Corporation asserting claims for breach of contract (Count I) and, in the alternative, account stated (Count II), based on: plaintiff's delivery of insulation products to defendant pursuant to purchase orders issued by defendant between June 27 and September 18, 2001; defendant's acceptance of delivery of such shipments invoiced by plaintiff between July 9 and September 6, 2001; and, defendant's failure to pay for such products. Plaintiff seeks an award equal to the invoice price of the products accepted by defendant plus interest at the rate provided for in plaintiff's invoices.

Defendant answered and filed a seven-count counterclaim against plaintiff. The first six counts assert causes of action arising from a distribution agreement between plaintiff and defendant, alleging: breach of contract (Counts I-IV); promissory estoppel (Count V); and tortuous interference with defendant's relationship with its customers (Count VI). Count VII asserts a breach of warranty claim alleging that between December 2000 and June 2001, defendant ordered and received from plaintiff 242 cartons of materials that had latent manufacturer's defects. In Counts I-VI, defendant prays for judgment in an unspecified amount

in excess of $75,000. Count VII, however, specifies that based on the alleged manufacturer's defects in a product known as Polyimed foam, of which plaintiff is the only supplier, one of defendant's customers, Bath Iron Works Corporation, rejected the products and defendant incurred $123,654.21 to cure the alleged defects. Defendant also claims that in return for defendant's continued orders, plaintiff had agreed to negotiate the terms of a set-off from the invoice price of such orders, but reneged on the agreement.

Shortly after defendant filed its answer and counterclaims, plaintiff filed a motion for partial summary judgment on Counts I and II of its complaint. For the reasons set forth below, the court grants in part and denies in part plaintiff's motion.

## FACTS[1]

Plaintiff manufactures insulation products. Defendant distributes insulation products and other products related to certain construction industries. Defendant and a predecessor corporation of plaintiff entered into a distribution agreement in September 1986, under which defendant would purchase insulation products from plaintiff and distribute those products to defendant's customers. Under this agreement, defendant was an authorized distributor of plaintiff's products from 1986 until at least September 2001.

During the period between June 27, 2001, and October 8, 2001, defendant sent plaintiff 15 purchase orders for insulation products. In response to these purchase orders, plaintiff shipped insulation products with accompanying invoices to defendant beginning on July 9, and

---

[1]The facts are taken from the parties' Local Rule 56.1 statements of undisputed facts.

continuing through October 8, 2001. The total of the invoices for these products, before interest, is $871,019.50.

Upon receipt of the insulation products from plaintiff, defendant "fabricated" the material by slicing it into specific sized pieces and applying an adhesive and fiberglass cloth material. In its answer to plaintiff's complaint, defendant admits that it accepted each of the shipments at issue and has sold or placed into its inventory for sale to defendant's customers all of the insulation products shipped pursuant to the specified invoices. Defendant further concedes that it has not made any payment to plaintiff for the invoiced products at issue.

## **SUMMARY JUDGMENT**

"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 668 (7th Cir. 2000), *quoting*, Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (U.S. 1986). While the movant has the burden of affirmatively demonstrating the absence of a genuine issue of fact, the opponent, "on the other hand, 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Shintom America, Inc. v. Car Telephones, Inc., 45 F.3d 1107, 1109 (7th Cir. 1995) (*citations omitted*). In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the non-moving party and make all reasonable inferences in his or her favor. *See*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (U.S. 1986).

3

## BREACH OF CONTRACT

Plaintiff moves for summary judgment on its breach of contract claim asserting that during the period when defendant was an authorized distributor of plaintiff's products, in response to purchase orders received from defendant, plaintiff shipped the ordered products to defendant along with invoices totaling $871,019.50. Defendant argues that plaintiff is not entitled to summary judgment on its contract claim based on a statutory[2] and alleged contractual[3] right to set-off costs defendant incurred based on the alleged increased fabrication cost defendant incurred due to an alleged manufacturer's defect in some of the products shipped from plaintiff to defendant.

Under Seventh Circuit precedent applying Illinois law, a defendant's claim in the nature of a set-off must be pled as a counterclaim and is to be adjudicated separately from the plaintiff's claim. See, Schieffelin & Co. v. Valley Liquors, Inc., 823 F.2d 1064, 1067-1068 (7th Cir. 1987); S.A.M. Electronics, Inc. v. Osaraprasop, 39 F.Supp.2d 1074, 1086 (N.D. Ill. 1999). It is well-recognized that under Illinois law, a set-off counterclaim is limited to damages arising out of the

---

[2]In its brief, defendant asserts a statutory right to set-off pursuant to 735 Ill. Comp. Stat. § 5/2-717. There is no such section. The court believes defendant's argument is made pursuant to a section of the U.C.C., codified in Illinois at 810 Ill. Comp. Stat. § 5/2-717, which provides:

> Deduction of Damages From the Price. The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

[3]Defendant asserts that prior to each shipment at issue, defendant orally told plaintiff that defendant would receive a set-off of the invoice price reflecting defendant's increased fabrication costs, which was a condition precedent to defendant's obligation to pay for plaintiff's products, and that plaintiff's shipment of the products to defendant with knowledge of defendant's intention to claim this set-off was an acceptance of this term.

4

same contract as the claim for the goods. Rebaque v. Forsythe Racing, Inc., 480 N.E.2d 1338, 1342 (Ill. App. Ct. 1985).

Applying this standard to factually analogous situations, the Seventh Circuit has held that "under Illinois law . . . distribution agreements and the purchase orders that arise under them are different contracts [and] [t]herefore, the price of the goods a buyer accepts pursuant to a purchase order is not susceptible to set-off against damages the buyer sustains as a result of a seller's alleged breach of a related distributorship agreement." Echo, Inc. v. Whitson Co., Inc., 52 F.3d 702, 705 (7th Cir. 1995). This rule applies regardless of the fact that the goods sold pursuant to the purchase orders are of the same character as those covered by the distribution agreement between the parties. *See*, Shintom America, Inc. v. Car Telephones, Inc., 45 F.3d 1107, 1109 (7th Cir. 1995).

The first six counts of defendant's counterclaim relate to plaintiff's alleged breach of the distribution agreement between plaintiff and defendant, and thus cannot be used to seek a set-off from plaintiff's contract claim. In Count VII of its counterclaim, however, defendant asserts a breach of warranty claim based on alleged manufacturer's defects in the products shipped to

defendant pursuant to purchase orders placed with plaintiff.[4] The amount of set-off damages alleged are specified as $123,654.21.

Under Illinois law and Seventh Circuit precedent, therefore, defendant's only defense to plaintiff's contract claim for $871,019.50 plus interest, is a set-off claim for $123,654.21. There is no dispute that defendant's purchase orders and plaintiff's invoices attached to the complaint constitute valid contracts between the parties. The price of the goods is that stated in plaintiff's invoices, less the potential set-off claim of $123,654.21, if defendant prevails on his breach of warranty counterclaim. Based on the undisputed facts before it, the court finds that there is no genuine issue of material fact that plaintiff has established a valid contract claim and defendant's breach thereof. Accordingly, the court grants plaintiff's motion for summary judgment on its contract claim for $871,019.50. The granting of summary judgment on plaintiff's contract claim, of course, does not affect or prejudice defendant's counterclaim, still pending before this court. Because plaintiff's account stated claim in Count II is an alternative claim seeking the same damages, the court denies summary judgment on that claim as moot.

---

[4] In its counterclaim, defendant does not specify which purchase order or invoice number the alleged defective products were shipped under, but alleges that the products were ordered and received by defendant between December 2000 and June 2001. Citing to these allegations and the documents attached to its complaint, plaintiff argues that defendant's set-off counterclaim is for defects in products that were already paid for in full by defendant prior to the time any of the shipments at issue in plaintiff's complaint were shipped. Although the first purchase order attached to plaintiff's complaint is dated June 27, 2001, the product invoice date, the date the materials were shipped to defendant, was July 9, 2001. While plaintiff may be correct that defendant is seeking a set-off from previously paid items, it is unclear because the items are of the same nature as the products at issue and pursuant to the same type of invoicing, rather than claims relating to a separate distributorship agreement. Accordingly, the court will allow defendant's set-off counterclaim alleged in Count VII to stand against plaintiff's contract claim.

## INTEREST ON OVERDUE AMOUNTS

In addition to the total of the unpaid invoices, $871,019.50, plaintiff moves for pre-judgment interest on this amount pursuant to the terms set forth in plaintiff's invoices. The invoice payment terms are: "net 45 days from date of invoice; 1.25 % per month finance charge on late payments." Defendants do not address or appear to dispute plaintiff's right to such damages. Under the U.C.C., codified at 810 Ill. Comp. Stat. § 5/2-207,[5] and official comment 5 thereto,[6] overdue payment interest penalty clauses in a seller's shipping documentation are not considered material alterations of the parties' contract and thus are incorporated into the parties' contract terms. *See*, <u>International Adhesive Coating Co., Inc. v. James River Paper Co., Inc.</u>,

---

[5]Section 2-207(1)-(2) provides:

Additional Terms in Acceptance or Confirmation. (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
    (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
        (a) the offer expressly limits acceptance to the terms of the offer;
        (b) they materially alter it; or
        (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
        \*   \*   \*

[6]Official Comment 5 to § 2-207, states:

5. Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: . . . a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for . . ..

7

1990 WL 92879 at *5 (N.D. Ill. June 26, 1990) (enforcing provision in seller's purchase order acknowledgment form for a 1 % per month interest charge for late payment, under § 2-207); Extel Corp. v. Cermetek Microelectronics, Inc., 539 N.E.2d 320, 323 (Ill. App. Ct. 1989) (provision in seller's invoice that accounts not paid in full within 30 days were subject to an 18 per cent per annum finance charge was a valid term of contract under UCC as interest provision was not material alteration to contract and there was no record of objection to the term).

Attached to its reply brief, plaintiff provided an invoice interest calculation computing the proper amount of total interest accrued by applying a 1.25 % per month rate as of July 1, 2002, totaling $94,599.08. Thus, the total of invoices and interest due as of July 1, 2002, is $965,618.58. Based on the undisputed terms of plaintiff's invoices, the court finds plaintiff is entitled to such interest as of that date and accruing at that rate.

The court further finds that because defendant has withheld payment on this large of a debt, with only $123,654.21 worth of damages that it had a legal right to setoff from such debt, plaintiff is entitled to interest on the full amount of the invoiced debt equaling $871,019.50, regardless of the merits of defendant's set-off claim, which is to be adjudicated at a later date.[7] In Twin Disc, Inc. v. Big Bud Tractor, Inc., 772 F.2d 1329, 1335-1336 (7th Cir. 1985), the court affirmed the calculation of prejudgment interest on the amount the buyer owed to the seller on account before offsetting the amount the seller owed to the buyer from a breach of warranty claim. The court held that the seller was entitled to interest on the money as a matter of law,

---

[7]The merits of defendant's breach of warranty set-off claim has not been briefed and is not before the court at this time.

8

noting that "Section 2-717, which allows a buyer to offset breach of contract damages but does not mention prejudgment interest, does not require a different result." *Id.*

## CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion for summary judgment on Count I of its complaint and denies summary judgment on Count II as moot. Because of defendant's set-off claim and the other six claims asserted against plaintiff in defendant's counterclaim, the court denies plaintiff's request to enter a final judgment on the amount owing under plaintiff's breach of contract claim. The court notes, however, that the interest awarded herein will continue to accrue on the $871,019.50 in unpaid invoices at 1.25% per month, until a final enforceable judgment is entered.

**ENTER:** **July 29, 2002**

_Robert W. Gettleman_
Robert W. Gettleman
United States District Judge

9